Good morning, and may it please the Court, my name is Richard Antonini, I represent the appellant Al Petrovich, and I'd like to reserve two minutes for rebuttal, if I may. All right. Thank you. I'm going to begin with what I think is Mr. Petrovich's strongest cause of action or claim for relief, and that would be the second claim for relief for violation of the Fair Debt Collection and Practices Act or the FDCPA. And the reason I believe it's his strongest case for relief is this Court's decision in Dower v. Nation Star Mortgage, which discussed and enforced a provision of the FDCPA 15 U.S.C. 6092F, subdivision 6. And let me just let me read it to you, if I may. It basically said that it's an unfair or unconscionable means to collect or attempt to collect a debt by, quote, taking or threatening to take any nonjudicial action to affect dispossession or disablement of property if there is no present right to possession of the property claimed as collateral through an enforceable security interest. Well, counsel, in order for that case to help you, don't you first have to prove that there was a collector involved? Yes. And we allege the cause of the second claim for relief is paragraphs 39 through 52 of the First Amendment complaint. That's pages 190 through 193. And it is alleged that both Aquin and the trustee were debt collectors because they were attempting to enforce a security interest, namely, by foreclosing the exact situation. Counsel, I'm looking at 1692A6F, which is a definition of debt collector. Yes. And it seems to exclude any person or include any person collecting or attempting to collect a debt. But I'm sorry, let's see. I'm sorry. This is what is excluded if it concerns a debt that which was not in default at the time it was obtained by such a person. Okay. Did Aquin acquire the was Aquin a servicer on something that was a debt at the time that it was that was in default at the time it was obtained? Yes. That is not clear from the allegations of the First Amendment complaint. Let me, first of all, concede that point. It is, however, I think, probably surmisable or at least implied because Mr. Petrovich was many months behind on his mortgage. The formal notice of default indicated he was many months behind on his mortgage. And so this loan likely went into default before Aquin became a servicer. Do you have a date? No, I don't. But we could do that if we were allowed to amend the complaint. We could probably allege that. Well, but that means that as pled, the complaint is not adequate. Yes. It does not plead. I'm not going to say it. It does not plead exactly when he went into default. I'm sure the Court understands the notice of default, which was issued in June 2014, was not the start of a default. The default occurs when Mr. Petrovich misses a single payment. And that obviously occurred sometime before the notice of default was issued. Do you have any cases that are contrary to your position? No. Are there any cases that are, that demonstrate your position? No. To my knowledge, no. I don't think that this Court has discussed when a default occurs in the context of an FDCPA claim. Usually that's fairly obvious or it's alleged somewhere in a relevant pleading. I know that Aquin cited the Fifth Circuit case and then, of course, the language you just quoted, Your Honor. But I can't, I am not aware of any case that talks about when a default exists. I think it has to be given sort of a common sense interpretation, and that would mean Mr. Petrovich's first missed payment. Now, considering the amount listed in the notice of default as being the amount past due, we can probably infer that the default, his first missed payment occurred many months before. What do you do with our case in Bien Phuong v. Ho? I cite the Court to Dowers, which discussed Ho, and said Ho talked about other provisions of the FDCPA and said under these other provisions, which are basically certain subdivisions of 1692e, an attempt to collect a security interest on real property is not normally debt collection. But then in Dowers, the Court said this would be a violation of 1692f, subdivision 6. So Dowers actually makes the distinction. I'm sorry. What was the difference between Dowers and Ho? In Ho, the Court, and I don't think Mr. Ho talked about 1692f, parens 6. In Dowers, the Court said that you could not sue in a foreclosure situation under the other provisions of the FDCPA, and specifically 1692e, but you could sue under 1692f, subdivision 6. Now, Dowers says that the difference in this case from Ho was that Nation Star, which was a – which was the servicer in Dowers, threatened to take nonjudicial action. Yes. That's exactly what happened here. They – they – Ocwen, the servicer, and the foreclosure trustee threatened to take nonjudicial action. They issued a notice of default, which starts the formal foreclosure process under California law. Right. That's just the ordinary process. Was there something different that they did? No. They – they probably sent various collection notices, and they also issued a notice of trustee sale. Right. But those are all just – that's all in the ordinary course of judicial – I mean, this would make mincemeat of our – of our decision in Ho, if you're correct. Your Honor, I – And if you – if you read Dowers that way, then Dowers is inconsistent with Ho, and one panel can't overrule another panel. So we have to find a way to reconcile them, or it has to go en banc. The way – the way you reconcile it, Your Honor, would be to say that Ho did not deal 6092F Subdivision 6, and Dowers did. Dowers itself points to the way you reconcile it. I think in Dowers, the Court said normally you can't – under Ho, you can't sue under the FDCPA for violations of the foreclosure process, except when you can invoke 6092F 6. Counsel, may I ask you – the language you just quoted, that's for three prohibitions against debt collection? Yes. Which one of these are you relying upon? 15 U.S.C. 6092F Subdivision 6, basically, essentially – A, B, or C. Which one are you relying upon? A. So you're saying that the foreclosure is barred because there is no present right to possession of the property by Aquan or the trustee? There is no present right to take the property as collateral through an enforceable security interest. Why not? In this case, because the security interest would be the deed of trust. Aquan has a right to enforce the deed of trust only if it's acting on behalf of the actual owner or successor to the lender of the deed of trust. And we allege that, at least for two reasons, Aquan is not acting on behalf of the real owner of the deed of trust, either because when – because Aquan is claiming the owner it's working for, the Soundview Trust, owns the deed of trust through two assignments. Mr. Petrovich alleges that these assignments are void because at the time they were made, the assigning party, Sand Canyon, had no mortgage interest to assign. It had gotten rid of them all. So you're challenging the chain of title. Exactly. Under 1692F6, subdivision A. And under the authority of the Doris case, getting back to the Court's concern again. Well, the Doris case only helps you if you can meet one of those subdivisions. And that's why I ask you which one you're relying upon. But essentially, you're going back to challenging the chain of title. Yes. But 1692F, subdivision 6, subdivision A allows us to do exactly that. I am relying on 1692F, subdivision 6, subdivision A. Did you ask the district court for permission to amend the complaint? Yes. Actually, if you look at page 202 of the record, the complaint itself includes a request for leave to amend if the district court found any fallacies. And I believe Mr. Petrovich, in his opposition to the motion to dismiss, requests leave to amend as well. Requests leave to amend specifically to include the argument you're making here today. I don't believe so, Mr. Petrovich. This is a whole different argument. Yes. And it really only came up because Dowers was issued earlier this year. Yes, that's true. But I would point the Court to paragraph 44 of the First Amendment complaint of page 191 of the record, which is essentially almost a paraphrase of 1692F, subdivision 6, subdivision A. And so everybody was certainly on notice that this was a claim Mr. Petrovich was making. All right. Thank you, counsel. You've exceeded your time, but we'll give you a minute for rebuttal. Thank you. Good morning, Your Honors, and may it please the Court. My name is John Ives, and I'm here on behalf of Defendants Aquinlone Servicing and Western Progressive. The district court's judgment of dismissal should be affirmed. The First Amendment complaint does not state a claim for relief. First and foremost, California law bars these sort of preemptive actions that are designed to make the beneficiary come into court and prove that it has the right to foreclose. The general idea is that California has a non-judicial foreclosure statute, so therefore we don't want to have judicial actions that seek just to foreclose because that would basically undermine that non-judicial foreclosure statute. How does the California statute intersect with the 1692 F6 argument that opposing counsel made? It doesn't really intersect at all. Obviously, the Fair Debt Collection Practice Act is a federal law, and we're generally talking about state law claims. So as a general matter, you can't bring wrongful foreclosure, declaratory relief, other sort of state claims of pre-foreclosure. How about the FDCPA Act that he's seeking to invoke? Well, I would just point out first that this is a very new theory. Yesterday afternoon was the first time I actually was aware that they were going to present this theory. It wasn't presented in the district court. They didn't present it in their briefing. I do note that I don't think Dowers helps them out at all. I think the key to understanding Dowers is that was a case that arose out of Nevada. What's wrong with that? Nothing. Absolutely. Nevada's a wonderful state. Thank you. At least a majority of the panel agrees with you, counsel. As is Rhode Island. But the key, though, is that my understanding of Nevada law is that one, at least during the time Dowers was being decided, or at relevant times during that period, is that Nevada had a foreclosure mediation program where once the lender issued a notice of default, then the borrowers could elect to go into this foreclosure mediation program. And as explained in the Dowers opinion itself, the parties went into that foreclosure mediation program, but the mediator declined to issue a certificate of foreclosure. So the foreclosure could not proceed. Basically, the lender in that case, Nation Star, didn't produce documents in that mediation showing the original loan file. So there, and it explains that sort of at the beginning of the Dowers opinion at 967, sort of explaining why the lender could not non-judicially foreclose. There, you had a very specific reason, because Nation Star did not comply with Nevada state law, so it therefore could not go forward with a non-judicial foreclosure until it successfully completed this mediation program. Just for the record, it's Nevada. Nevada. I apologize. But I think that's the key to understanding Dowers. In Dowers, you had a very specific reason why Nation Star could not proceed. So the mediator had sent out a letter saying, I'm not going to issue this certificate in February of 2014. Then after that, Nation Star took several steps. It sent letters, demand letters. It made telephone calls. It threatened to take steps to enforce the security interest. Here, by contrast, we don't have a viable theory showing that the loan was not, in fact, assigned to Deutsche Bank. We have a legal conclusion that the assignment was void, but none of the facts alleged actually support that. The primary factual theory in the First Amendment complaint, as it's pleaded, was that this assignment occurred after the Securitized Trust closing date, and therefore, the assignment was void because of that. Well, we now have a growing body of case laws, a number of published California Court of Appeal opinions, and a Ninth Circuit-issued published opinion saying that a post-closing transfer does not render the assignment void. It merely renders it voidable. And if it's only voidable, the borrower does not have standing to challenge it. The basic idea is that, you know, borrowers don't have standing to say, there's been violations of this pooling and servicing agreement that governs the trust. Only the trust beneficiaries could say, hey, there's something wrong here. When trust beneficiaries can say that we approved this transfer, that would mean that that assignment was voidable. So let's say there was a post-closing date transfer. The trust beneficiaries in those cases can say, okay, it violated the terms of the pooling and servicing agreement, but we can still accept that loan. We can also, here we have some vague allegations in the briefs that, quote-unquote, certain steps weren't taken, meaning certain steps of the pooling and servicing agreement weren't complied with, and that means that the transfer was void rather than voidable. Now, really, there's no specific facts to back that up, but it also gets you back right to the same conclusion a number of courts have already reached, that, look, if there was some problem with, you know, not complying with specific things in the pooling and servicing agreement, the trust beneficiaries can still approve the assignment. They can still accept the transfer of that loan. Counsel, I'd like to take it back to Dowers, because it seems to me that this is where the appellant has placed all of his eggs today. So if I understand the way that you think that Dowers is distinguished is that the problem there was that NationStar invoked its foreclosure rights, which it was entitled to do, which is why in Dowers we affirmed all of those claims based on claims similar to what was raised here, but then went into this mediation program and failed to obtain a certificate of foreclosure from the mediator, which was a prerequisite to being able to exercise its foreclosure rights in Nevada. That's exactly right. And so when it continued to threaten to foreclose, the Court deemed that nonjudicial Exactly. Nonjudicial steps and took it under 1692 F6. That's exactly right. The parties went into this mediation, and NationStar did not produce the original loan file in that mediation. And it even says, you know, then on February 2014, the mediation office sent the parties a notice stating that based on the mediator's recommendation, it would not issue a certificate of foreclosure. Then after that, NationStar continued to try to attempt to enforce the security interest. That is why in that case, NationStar, there was a showing that NationStar had violated that specific section of the FDCPA. But in general, both Ho versus ReconTrust and Dowers reaffirmed the general principle that for the most part, there is no viable FDCPA claim based on, you know, any sort of nonjudicial foreclosure. There's only that one very little tiny subsection that was at issue in Dowers. But in fact, Ho, as was previously discussed, basically says that, you know, a trustee issuing a notice of default, issuing a notice of trustee sale, those aren't attempts to collect a debt. Those basically are just attempts to enforce a security agreement. So it's not a violation of the Fair Debt Collection Practices Act. So I see my time is winding down a little bit. But in my general points, this is a pre-foreclosure lawsuit. So number one, since there's been no foreclosure, there can be no wrongful foreclosure claim. But even more broadly, California law bars preemptive suits unless there's been a specific fact alleged showing that the beneficiary doesn't have the right to foreclose. And we don't have that here. What we have are a couple of basically the main allegation in the complaint, the first closing date transfer, which has been dealt with in a number of published case. We also have this theory that the 2014 assignment of deed of trust couldn't possibly be the way that the loan was transferred. And that's absolutely correct. An assignment of deed of trust is not the way a loan is transferred.  You say the foreclosure was never effectuated in this case. That's true. There was a notice of trustee sale, and then the lawsuit was filed. And my understanding is there hasn't been a foreclosure since. So we're still dealing with a preemptive pre-foreclosure matter. There's nothing in the fact that that assignment of deed of trust was recorded in 2015 that shows that a loan could not have been privately assigned before that. Loans are, you know, promissory notes are negotiable instruments. They're transferable privately. There's no requirement that each time a loan is transferred around privately from one hand to another that there's ever any public recorded assignment of deed of trust. So the fact that there was an assignment in 2014 doesn't show that before that the loan hadn't been privately transferred to Deutsche Bank. So that's not a specific factual basis showing that, in fact, Deutsche Bank or its agents couldn't proceed with the nonjudicial foreclosure. And with that, unless the Court has any questions, I'll submit. It appears not. Thank you, counsel. Thank you, Your Honor. Thank you, Your Honor. Let me get to his first last point first. This idea that the assignments did not show, you know, maybe, you know, this was transferred earlier, absolutely no evidence in the record of this. No citation. When they made this argument in their brief, no citation to the record. There is no allegation in the complaint that the assignments evidenced a prior transfer of some years before. Mr. Petrovich's allegations that the assignments assigned, you know, purported to assign the loan when they were made have to be taken as true. I might add the assignments themselves don't talk about a past transaction. They use the present tense. So there is no basis for this. Counsel, I'd like to take you back to Dowers and the 1692F6. So in Dowers, your opponent says that that was because of a quirk in Nevada law requiring a certificate of foreclosure from a mediator, the mediator program having been set up to deal with the housing crisis in Nevada. How does that fit into your view of Dowers and Hoe? I think Dowers was much broader than that. But let me first of all point out that Dowers, from what I can tell, and I think counsel sort of conceded the point, was a pre-foreclosure case that found a cause of action under 1692F6. Second, let me ---- Right. But that didn't answer the question. No, no, it doesn't. And let me answer the question now. The statute itself, and I believe in Justice Scalia's view of this, you take statutes at their word and you apply their plain meaning. It says, threatening, taking or threatening to take any, any nonjudicial action to affect dispossession or disembowelment of property. Any nonjudicial action. But there is more language after that. If A, B, or C, and you're going under A, there is no present right to possession of the property claimed. Right. Through an enforceable security interest. Right. Yes. So you're challenging the title. Is it correct as a posting counsel, excuse me, represented that you're actually challenging the terms of the pooling and servicing agreement? That is one basis. That is not the only basis. What's the other? If you're not ---- The other basis, I think, if you look at paragraph 63 of the First Amendment complaint and then Exhibit C to the First Amendment complaint, is the assignments were done by Sand Canyon Corporation, which was the successor to Option 1 Mortgage, the original lender. And ---- But that's still challenging the terms of the pooling and servicing agreement. No. It is actually saying that when the assignments were done, there was nothing to assign because Sand Canyon had given up all its mortgage interests. And we actually attach a declaration as Exhibit C from Mr. Tsujimoto, the president of Sand Canyon, where he testifies under oath that in April 2008, they gave up all their mortgage interests. Now, we are alleging under California law there was nothing to assign, and we invoke the Sierrata v. U.S. Bank case to ---- Well, speaking of California law, do you agree with the posting counsel that no foreclosure has been effectuated? Yes. And so what do you do with the California cases that preclude suits of this nature preemptively? First, I might ---- this is a new position from opposing counsel. They recognize in their ---- That's a pot caught in the kettle. That's true, Your Honor. That is quite true. But be that ---- but I will point out that they argued in their brief that California does allow an exception to that rule for specific factual allegations of a break in title, and we certainly, I think, presented such specific factual allegations, and that is supported by California case law, the Gomes and Glaske cases. But more to the point, under 1692F, which is a Federal statute, it applies to threatening to take. That seems to invoke ---- Right. If there's no right to possession of the property claimed as collateral through an enforceable security interest. Yes. And we are ---- we allege there is no right to enforce the deed of trust because they were not validly assigned the deed of trust. So everything comes back to the assignment question. Yes, it does. Including your 1692F6 argument. Exactly. Exactly. So in that sense, then, your 1692F6 argument isn't really new. No, it's not. It is ---- and if you look ---- And it all turns on how we view the ---- whether you ---- whether that is ---- whether the ---- your challenge to the assignment is a question that's void or voidable. Right. Yeah. The enforceable security interest terminology under 1692F I think would be a matter of State law, and so it would be California law. And we argue that is void ---- the assignments are under void under California law because there was nothing to assign. And that invokes a c erotic issue. All right. Thank you, counsel. Thank you to both counsels. Thank you, Your Honor. The case just argued is submitted for decision by the Court.
judges: Rawlinson, Bybee, Smith